Col. David W. PALMER, II, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1588C.

United States Court of Federal Claims.

June 27, 1997.

David W. Palmer, II, Fort Walton Beach, FL, pro se.

John A. Groat, Washington, DC, Department of Justice, with whom was Acting Assistant Attorney General Frank W. Hunger, for defendant. Lieutenant Colonel Kevin Chapman and Major Christine Lerch, Dept. of Army, JAG, of counsel.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge.

David W. Palmer II, plaintiff, pro se, filed the complaint in this case on November 14, 1991. As attorney of record, he has filed four related cases: *Lt. Col. Willie L. Godwin, Jr.*, docket No. 91–1568C, November 5, 1991; *Col. Thomas J. Giovanini*, docket No. 91–1658C, December 2, 1991; *Col. Charlie G. Welch*, docket No. 92–22C, January 13, 1992; and *James M. Herbert*, docket No. 94–191C, March 21, 1994.

Each of the related cases contains more than one issue, but central in each is whether 37 U.S.C. §§ 204(a) or 206(a) provides a right to payment to a reservist who is not on continuous active duty, who is not ordered to perform work, and who does not actually perform work. *Godwin, Palmer, Giovanini* and *Welch* also involve proceedings before the Army Board for the Correction of Military Records (ABCMR); *Herbert* involves action of an Army Qualitative Retention Board (QRB) and a contention that 37 U.S.C. § 206 applies to inactive duty training that was not actually performed.

Plaintiff has a legal and a military background. He received a BA degree in 1958, in Business and Economics, and an LLB degree in 1960. He is a member of the Florida Bar and was in the general practice of law until 1964. Plaintiff was appointed as a second lieutenant (USAR) on June 6, 1958, through the Reserve Officers Training Corps (ROTC) program. On February 23, 1964, he accepted an appointment in the Regular Army with

the rank of first lieutenant. On June 24, 1964, he was promoted to captain, and remained on active duty until October 1, 1969. He transferred to the USAR in the rank of captain on October 2, 1969, and on May 2, 1970, was assigned to the 361st Civil Affairs Brigade (USAR) in Pensacola, Florida. By September 12, 1984, he held the rank of colonel, USAR, and served as Assistant Chief of Staff (AC of S) of the 361st C.A. Brigade. On September 20, 1987, he was involuntarily transferred to the Individual Ready Reserve (IRR) for the reason that his tenure had expired. He was reassigned to Army Personnel Center (ARPERCEN) Control Group (REINF) on November 18, 1987, under AR 140–10, ¶ 2–186. He was discharged from the Army on July 17, 1990.

Consideration of the central issue in these related cases has generated interrelated multiple steps. The first four complaints as originally filed sought declaratory judgment and mandamus to compel reinstatement, injunctive relief, and back pay under 5 U.S.C. § 5596. All failed to allege properly a pay mandating statute as needed to state a claim on which relief can be granted under the Tucker Act. Defendant filed motions to dismiss the complaints under RCFC 12(b)(1), and alternatively under RCFC 12(b)(4): Godwin, February 5, 1992; Palmer, February 18, 1992; Welch, March 27, 1992; and Giovanini, April 30, 1992. Briefing on all of defendant's motions to dismiss had been completed by September 2, 1992. Oral argument was heard on September 2, 1992, concurrently, on Godwin and Palmer.

During the argument, defendant recognized the court had subject matter jurisdiction and argued that the cases should be dismissed for failure to state a claim on which relief can be granted. Both parties recognized that the complaints should be amended to add pay mandating provisions, 37 U.S.C. §§ 204 and 206, and such other provisions as may be applicable in the specific factual situation.

Defendant argued that the complaints should be dismissed under RCFC 12(b)(4) because, on the basis of Banks v. Garrett, 901 F.2d 1084 (Fed.Cir.1990), members of Reserve components who are not on continuous active duty are not entitled to pay for constructive service. Plaintiff contended that Banks v. Garrett was not controlling on facts that apply to officers assigned to a special operations command (SOC) authorized under 10 U.S.C. § 167. Inasmuch as Godwin involved reassignments of reservists who had troop program assignments in SOC units, and the record was adequate for dismissal under RCFC 12(b)(4). it was agreed that Godwin would be an appropriate vehicle to ascertain the validity of plaintiff's argument. As a result, after the complaint was amended, defendant's motion to dismiss in Godwin was allowed because the amended complaint did not state a claim on which relief could be granted. Judgment of dismissal was entered on September 17, 1992.

The September 17, 1992, judgment in Godwin was appealed. During pendency of the appeal in Godwin, proceedings were suspended or stayed in the related cases: Giovanini, December 15, 1992; Welch, December 14, 1992; Herbert, March 21, 1994; and, after further proceedings, Palmer, June 2, 1994.

On September 28, 1995, the Federal Circuit affirmed the judgment that dismissed the complaint in Godwin. On November 22, 1995, the suspensions in Palmer, Giovanini, Welch and Herbert were lifted and the parties were directed to file a joint recommendation as to further proceedings. Ultimately, on June 27, 1996, the court accepted the recommendation that the complaint in Palmer should be further amended so as to request relief additional to the claims in its complaint, as amended to September 17, 1992. During further proceedings on Palmer, the suspensions continued in Giovanini, Welch, and Herbert.

Palmer Proceedings

The November 14, 1991, complaint in Palmer contained Counts I through V. At the September 2, 1992, oral argument on defendant's motion to dismiss, the complaint alleged: the June 21, 1989, decision of the ABCMR on plaintiff's removal from a tenured position was contrary to the evidence and was arbitrary, capricious, and contrary to law; that there were violations of 10 U.S.C. § 167(e)(2)(J), AR 140–10 and AR 15–185; that there was a money claim based on

a dispute with the Army Finance and Accounting Center for pay connected with an active duty assignment in Peru in August 1987; and that the unit commander's unlawful favoritism to other officers had resulted in a situation where plaintiff was unable to obtain the minimum 2 years of command time required for consideration by the General Officer Selection Board at ARPERCEN.

The complaint and the motion papers included documentary exhibits that were relevant to the allegations made. Because the record contained a variety of materials in addition to the pleadings, defendant's motion to dismiss was treated as a motion for summary judgment. The record, however, was not adequate for summary disposition under RCFC 56. The ABCMR administrative record was not before the court, and plaintiff needed additional discovery. On September 3, 1992, defendant's motion to dismiss for lack of subject matter jurisdiction, and the alternative motion to dismiss for failure to state a claim upon which relief can be granted, were denied.

Further proceedings were authorized for disposition of plaintiff's claims. Plaintiff was authorized to file an amended complaint that identified pay mandating statutes and regulations on which the claims were based. Defendant was directed to file the ABCMR administrative record, and to file its answer to the amended complaint.

In *Palmer*, proceedings became protracted. Plaintiff amended the complaint on September 14, and 17, 1992, and the answer and counterclaim were filed on October 20, 1992. Defendant filed what was purported to be the ABCMR administrative record on September 22, 1992, that contained 502 pages; on defendant's request, a call pursuant to 28 U.S.C. § 2507 was issued to the Secretary of the Army on February 23, 1993. The Secretary's response, consisting of pages 1–776 was filed April 16, 1993.

On May 17, 1993, defendant filed a motion to dismiss Counts I, II, IV and V of the amended complaint for failure to state a cause of action for relief cognizable under the Tucker Act. On June 14, 1993, plaintiff attempted to file an answer to defendant's counterclaim, an answer to defendant's motion to dismiss parts of the complaint, and a motion for partial summary judgment. To clarify confusion, and in the interest of orderly procedure, an order on procedure was entered on July 8, 1993, that: declared further proceedings would be under the summary judgment rules, RCFC 56 and 56.1; authorized filing of plaintiff's answer to the counterclaim; directed plaintiff's motion papers to be returned unfiled; ruled that defendant's May 17, 1993, motion to dismiss was treated as a motion for summary judgment on an inadequate record; directed plaintiff to file any additional documentation material to his claims and to file a motion for summary judgment; and established a schedule for further proceedings on cross-motions for summary judgment.

On August 12, 1993 plaintiff filed 85 pages of additional documentation that were relevant to the administrative record of the ABCMR or material to his claims and defendant's counterclaim. Briefing on the cross-motions for summary judgment was completed on December 2, 1993.[1]

Oral argument in *Palmer* was scheduled for May 5, 1994. Due to illness of defendant's attorney of record, oral argument was not heard on May 5, 1994. Argument was to be rescheduled by further order. On May 31, 1994, the parties by joint motion requested suspension of all proceedings, pending decision of the Federal Circuit in the appeal

---

1. Briefing papers on the cross-motions for summary judgment on Counts I–V are limited to the following:

1. Defendant's motion to dismiss Counts I, II, IV and V, filed May 17, 1993.

2. Plaintiff's motion for summary judgment on all counts in the complaint, with memorandum in support of plaintiff's statement of facts, filed August 18, 1993.

3. Plaintiff's statement of facts, filed August 18, 1993.

4. Defendant's reply to plaintiff's opposition to defendant's motion to dismiss and defendant's cross-motion for summary judgment on Count III, filed November 17, 1993.

5. Defendant's statement of proposed findings of uncontroverted fact, filed November 17, 1993.

6. Defendant's counter statement of facts, filed November 17, 1993.

7. Plaintiff's statement of genuine issues, filed December 2, 1993.

in *Godwin.* All proceedings in *Palmer* were suspended on June 2, 1994.

After the *Godwin* judgment was affirmed, plaintiff on February 2, 1996, recommended that the status of the four related cases should be resolved through further proceedings in *Palmer* that could provide a vehicle for an appeal to the Federal Circuit. Plaintiff contends that the decision in *Banks v. Garrett* is flawed in several respects, and that further proceedings are appropriate to resolve an impasse that results from that decision.

On September 11, 1996, plaintiff was directed to file a second amendment to the complaint to assert additional grounds for monetary compensation based on analysis of 37 U.S.C. §§ 204(a)(1), 204(a)(2) and 206. The second amended complaint, filed on September 27, 1996, added counts VI and VII. On October 11, 1996, defendant filed a motion to dismiss counts VI and VII for lack of jurisdiction, or in the alternative, for failure to state a claim on which relief can be granted. On October 29, 1996, plaintiff was directed to file a response; a reply by defendant was not authorized. Plaintiff's brief in response was filed on November 21, 1996.

### Disposition

At this stage of proceedings, this case is before the court on cross-motions for summary judgment. Material facts are not in dispute and oral argument on the record before the court is not necessary.

Throughout this case, defendant has continued to base its opposition in the framework of a dismissal on the pleadings for lack of subject matter jurisdiction, (RCFC 12(b)(1)) or, in the alternative, for failure to state a claim on which relief can be granted. (RCFC 12(b)(4)). This course was followed in defendant's February 18, 1992, motion to dismiss the complaint, its May 17, 1983, motion to dismiss Counts I, II, IV and V, and its October 11, 1996, motion to dismiss Counts VI and VII.

Defendant's continuation of its argument that the court lacks subject matter jurisdiction is strange in view of defendant's concession during the September 2, 1992, oral argument that the motion to dismiss should properly be for failure to state a claim upon which relief can be granted. During that argument, defendant's counsel acknowledged that Federal Circuit decisions in military pay cases required such result. *Banks,* 901 F.2d at 1087; *Dehne v. United States,* 970 F.2d 890, 894 (Fed.Cir.1992).

Defendant's continued assertion of a motion to dismiss for lack of subject matter jurisdiction reflects a persistent confusion over the meaning of "jurisdiction" as that term applies to claims against the United States under the Tucker Act. Defendant fails to recognize and to distinguish the two distinct meanings of "jurisdiction" that apply in claims against the Government.

■ In claims arising under the Tucker Act and in military pay claims under 37 U.S.C. §§ 204 and 206, issues relative to sovereign capacity and consent to be sued cloud jurisdictional concepts. Subject matter jurisdiction relates to the area of substantive law that Congress has empowered the court to adjudicate. The exercise of subject matter jurisdiction, in claims against the Government, is further restricted in particular cases by specific facts that implicate the consent of the sovereign to be sued. As a consequence, the term "jurisdiction" has been given at least two distinct meanings. First, the court's general powers to adjudicate in specific areas of substantive law—subject matter jurisdiction. Second, the jurisdiction of the court in a particular case to exercise its general power on the facts peculiar to a specific claim. *See Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679, 686–89 (Fed. Cir.1992); *Bray v. United States,* 785 F.2d 989, 992 (Fed.Cir.1986).

During the oral argument on September 2, 1992, the parties acknowledged that the complaint as filed was defective in that it did not plead a pay mandating statute, and that amendment to cure this defect was appropriate. The exhibits attached to the complaint, however, showed plaintiff had been assigned since September 11, 1984, to a staff position in the Special Functions Section of the 361st Civil Affairs Brigade, and had been reassigned to ARPERCEN, Control Group (REINF) effective November 18, 1987. The exhibits also included: an ABCMR memo-

randum of consideration dated June 21, 1989, on plaintiff's case No. AC 88–10113; an AR-PERCEN recommendation to the ABCMR, dated November 30, 1988, and letters dated March 31, 1988, and May 5, 1988, reporting on results of investigations by the Inspector General that supported plaintiff's allegations concerning violations of 120th ARCOM poli-cies. These attached exhibits supported the conclusion this case was a military pay case within the subject matter jurisdiction of the court, and that dismissal of the complaint on the pleadings would not be appropriate. The September 3, 1992, order included the follow-ing conclusions:

Military personnel claims based on pay mandating statutes and regulations tradi-tionally have been within the general Tuck-er Act jurisdiction of the Court of Claims and this court. 28 U.S.C. § 1491(a) (1988). *See, e.g., Brown v. United States,* 184 Ct. Cl. 501, 396 F.2d 989 (1968); *Kirby v. United States,* 201 Ct.Cl. 527 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 814 (1979); *Matias v. United States,* 923 F.2d 821, 823–25 (Fed.Cir.1990). For purposes of dismissal on the pleadings under RUSCC 12(b)(1), the complaint states claims within the subject matter jurisdic-tion of this court. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Mindes v. Seaman,* 453 F.2d 197, 198 (5th Cir.1971): *Bray v. United States,* 785 F.2d 989, 992 (Fed.Cir.1986); *Merck & Co. v. United States,* 24 Cl.Ct. 73, 77–79 (1991). Accordingly, defendant's motion to dismiss under RUSCC 12(b)(1) must be denied.

A complaint should not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Aleut Community of St. Paul Island v. United States,* 202 Ct.Cl. 182, 480 F.2d 831, 833 (1973). The court must "assume each well-pled factual allegation to be true and indulge in all reasonable inferences in favor of the non-

movant." *Chang v. United States,* 859 F.2d 893, 894 (Fed.Cir.1988). In this case, it is clear that there exists some set of facts under which plaintiff could recover. Plaintiff is entitled to present evidence to support his claims. The Government's mo-tion to dismiss under RUSCC 12(b)(4) for failure to state a claim upon which relief can be granted must be denied.

The record before the court, as present-ly constituted, contains a variety of materi-als in addition to the pleadings which are not excluded by the court. In such cir-cumstance, under the rules, defendant's motion should be treated as a motion for summary judgment.

The record before the court, however, was not adequate for summary disposition under RCFC 56 at that time. The administrative record of the ABCMR was not before the court and the legality of the Board's action could not be determined. Plaintiff contended that discovery was needed to uncover infor-mation relative to the allegations in the com-plaint.

After September 3, 1992, dismissal on the amended pleadings would not be consistent with the rules of this court. All subsequent proceedings were subject to summary judg-ment procedures (RCFC 56), or pretrial preparation (RCFC, Appendix G).

Summary judgment under RCFC 56(c) shall be rendered forthwith "if the pleadings, depositions, answers and interrogatories, and admissions on file, together with the affida-vits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." The nonmoving party, under RCFC 56(f), by affidavits or as otherwise provided in the rule "must set forth specific facts showing there is a genuine issue for trial."

■ Summary disposition is appropriate to isolate and dispose of factually unsupport-ed claims or defenses and there are no genu-ine disputes as to any material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987).

The movant has the burden of demonstrating that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). After adequate time for discovery and on motion, the movant can meet this burden by establishing that there is an absence of evidence on an essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). The fact that there are cross-motions for summary judgment does not mean the court must grant judgment as a matter of law for one side or the other. Each party's motion must be evaluated on its own merits. All reasonable inferences must be drawn against the party whose motion is under consideration. *Mingus Constructors, Inc.*, 812 F.2d at 1391. The non-movant must respond by producing affirmative evidence that a genuine issue of material fact does exist, and such an issue is determined to be genuine if a reasonable jury could resolve a factual matter in the non-movant's favor. *Sweats Fashions, Inc.*, 833 F.2d at 1562. Doubts as to whether there are material factual issues in dispute are to be resolved in the light most favorable to the party opposing the motion for summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). "In order to defeat a motion for summary judgment, the non-moving party must demonstrate more than some metaphysical doubt as to the material facts, instead it must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In this case there has been more than adequate time for discovery. Defendant has filed 502 pages in response to the direction to file the ABCMR administrative record. At defendant's request, a call for documents relative to plaintiff's claims was issued to the Secretary of the Army pursuant to 28 U.S.C. § 2507. The Secretary's response provided 776 pages. Plaintiff has filed 85 pages of additional documentation. The record now includes all documentary information that would support contentions of either party, to the extent such documentation exists.

The cross-motions for summary judgment on Counts I–V do not accord with the requirements in RCFC 56(d)(1) for separate documents entitled Proposed Findings of Uncontroverted Fact and Statement of Genuine Issues. The motion papers relative to Counts I–V that were prepared for the oral argument scheduled for May 5, 1994, contained conclusions and speculations both factual and legal, and were not confined to facts material to plaintiff's claims for compensation and eligibility for equitable relief under 28 U.S.C. § 1491(a)(2).

The record includes information sufficient to establish all facts in Counts I through V material to those issues. Counts VI and VII essentially are confined to legal argument concerning interpretation of 37 U.S.C. §§ 204 and 206 and the effect of the decision in *Banks v. Garrett*. There are no material issues of fact in dispute. Disposition of this case by summary judgment procedure is appropriate.

The issue is whether, on the basis of the entire record, plaintiff is entitled to any compensation for service in the Reserves after his involuntary transfer from the 361st Civil Affairs Brigade, effective November 18, 1987, to the ARPERCEN Control Group (REINF), to reinstatement, and to correction of his military records. Disposition of this issue is dependent upon the validity of the transfer.

The complaint, and the papers related to defendant's February 18, 1992, motion, defendant's May 17, 1993, motion and plaintiff's August 18, 1993, cross-motion, demonstrate a characteristic that pervades plaintiff's presentation of his claims. Throughout the proceedings in this case, plaintiff's objective has been to obtain the type of collateral relief that is authorized in 28 U.S.C. § 1491(a)(2). To this end, the plaintiff's presentation concentrates on the ultimate objective, but fails to provide the intervening steps essential to the award of such relief. Supporting materials initially omitted, and arguments that misstate documents cited in support, are remed-

ied by subsequent changes after deficiencies were disclosed.

The initial complaint, for example, alleged jurisdiction under Section 1491(a)(2), but failed to allege a pay mandating statute. This deficiency was acknowledged and corrected after defendant emphasized the error. The second amended complaint added the arguments in Counts VI and VII on an alleged impasse caused by *Banks v. Garrett* after the Federal Circuit decision in *Godwin* confirmed that *Banks v. Garrett* was binding precedent.

Plaintiff's "catch-up" correction of previous error or omission compounds confusion in the record, and distracts from the contentions that in fact are material to the issues that control disposition of plaintiff's claims. Much paper and attention has been devoted to obfuscating side issues.

*Count I*

Count I of the complaint concerns the June 21, 1989, decision of the ABCMR, and its denial of reconsideration on June 21, 1991. Plaintiff contends the decision of the ABCMR was contrary to the evidence, arbitrary, capricious and an abuse of discretion. Plaintiff supports this claim by reference to attached exhibits 5 through 11, which he asserts the ABCMR chose to ignore. The exhibits included a recommendation to the ABCMR from ARPERCEN, that was favorable to plaintiff's petition and arguments, and two letters, dated March 31, 1988, and May 5, 1988, from Army Inspector General that supported plaintiff's allegations that there had been violations of policies applicable to filling unit vacancies at the 361st Civil Affairs Brigade.

Plaintiff's DD Form 149, the application to the ABCMR for correction of his records is dated December 22, 1987. The case number is 88–10113. The petition references 30 attached exhibits; Number 30 was the March 31, 1988, IG report. Prior to the June 21, 1989, decision, plaintiff amended his petition and submitted additional exhibits. After the June 21, 1989, decision, plaintiff submitted additional exhibits in connection with the request for reconsideration, which was denied on June 21, 1991. Plaintiff concedes that the Board had before it all the issues and docu-

mentary exhibits in its amended petition that were available before the Board's June 21, 1991, denial.

Count I of the complaint is essentially a reiteration of the petition previously made to the Board; it includes some of the exhibits submitted to the Board. The ABCMR in its June 21, 1989, decision considered plaintiff's application as amended to that date and his military personnel records then available. In its June 21, 1991, denial of reconsideration, the Board's staff, in its review of the additional exhibits and argument, concluded it did not amount to new material evidence which was not in the record on June 21, 1989.

Point III of the petition to the ABCMR included allegations that plaintiff's removal and reassignment violated statutes applicable to the Special Operations Command (SOC), 10 U.S.C. §§ 161, et seq. Section 167(e)(2)(J) requires the commander to monitor the promotion, assignments, retention, training and professional military education of officers in an SOC force.

Counts I and II of the complaint concern the alleged failure of the SOC commander to monitor plaintiff's reassignment.

*Count II*

Count II, in paragraphs 1–5 is a general analysis of the legislative purpose and policies relative to monitoring the assignments of key SOC officers. The material in paragraphs 1–5 was included in plaintiff's petition to the Board. Count II, in paragraph 6, identifies two officers who allegedly were promoted in violation of the monitoring regulations into positions, and who continued to occupy positions, which plaintiff asserts could have been occupied by plaintiff. Count II, ¶ 6 seeks an injunction directing the Secretary of the Army to revoke the orders promoting those two officers, based upon their allegedly fraudulent promotions. Exhibits 13 and 14 to the complaint are documents that relate to the promotions that allegedly are in violation of 10 U.S.C. § 167(e)(2)(J). Exhibits 13 and 14 were not presented to the Board.

■ An appeal to boards for the correction of military records is not a statutorily

mandated prerequisite to federal court jurisdiction. The Court of Claims articulated the rule that exhaustion of administrative remedies by resort to correction board procedures was permissive. *Kirby v. United States,* 201 Ct.Cl. 527 (1973); *Poe v. United States,* 7 Cl.Ct. 40, 42 (1984). Once a plaintiff has sought relief from a correction board, however, the plaintiff is bound by that board's determination unless he can satisfy the difficult standard of proof that the correction board's decision was illegal because it was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, or money is due. *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 811 (1979).

■ These standards apply to the Court of Federal Claims in a review of a decision of the ABCMR. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986); *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983). There is a strong presumption that military officers and administrators discharge their duties correctly, lawfully, and in good faith. *Sanders,* 594 F.2d at 813. On summary judgment, it must be determined whether substantial evidence supports the decision of the ABCMR. *Arens v. United States,* 969 F.2d 1034, 1037 (Fed.Cir.1992). The burden is on the plaintiff to prove that the ABCMR decision was defective by "cogent and clearly convincing evidence." *Sawyer v. United States,* 930 F.2d 1577, 1580 (Fed.Cir.1991).

■ The ABCMR decision, insofar as it applies to plaintiff's claim for compensation, is determinative of the validity of plaintiff's involuntary reassignment to the IRR Control Group on November 18, 1987. The evidence considered by the Board is the same as the evidence plaintiff offers as a basis to overturn its decision. In the absence of a demonstration of a failure to meet the standards, this court should not substitute its view on the probative value of the evidence for that of the Board. The Board's decision that the requirements of AR 140–10, as applied to plaintiff, is not shown to be erroneous. The Board's decision that plaintiff's reassignment was valid is reasonable and it is supported by substantial evidence. Plaintiff's exhibits 13 and 14 are not sufficient to establish that the promotions of the two officers identified in Count II were fraudulent and void because of a failure of the SOC commander to monitor their assignment. In any event, whether plaintiff would be promoted to the position they occupied is speculative, and the validity of their occupancy of their positions has little relationship to whether plaintiff's reassignment was valid.

*Count III*

■ Count III of the November 14, 1991, complaint is based on a dispute with the Army Finance and Accounting Center (Finance Center) about plaintiff's pay for a 2–week tour in August 1987 of active duty for training (ADT). The orders, issued on July 31, 1987, by the 120th Army Reserve Command (ARCOM) directed plaintiff to report to Peru for ADT, and as amended on August 6, 1987, to report to Peru/Panama. The training tour was to be for 16 days, August 11, 1987, through August 26, 1987. The Commander of the training tour in Peru terminated the exercise early because of threatened terrorist activity. Plaintiff departed Peru on August 22, 1987, and arrived in Florida on August 23, 1987. Amended orders, effective September 15, 1987, were issued to change the active duty period from 16 days to 13 days. Plaintiff was paid for active duty through August 26, 1987, an overpayment for 3 days.[2]

On November 16, 1988, the Finance Center advised plaintiff he was indebted to the United States in the amount of $591.05 for 3 days overpayment made on September 2, 1987. Plaintiff was notified that the due date was December 16, 1988, that interest would accrue from the date of the letter, and that late payment penalty charges could be as-

---

**2.** The overpayment was based on the following elements: Base Pay, Basic Allowance for Quarters, and Basic Allowance for Subsistence. The overpayment initially was calculated erroneously as $591.05; on January 16, 1992, the overpay-ment initial amount was corrected to a total of $522.92. Defendant's counterclaim in its October 22, 1992, answer, is based on the $591.05 amount.

sessed. On November 30, 1988, plaintiff filed an application for waiver of erroneous payment, and requested the September 15, 1987, orders be revoked because they were issued after the ADT had been performed. Plaintiff argued that the decision to terminate the tour in Peru was for the convenience of the Government. Plaintiff also requested an evidentiary hearing under 32 CFR § 90.6, if the orders were not revoked and the GAO did not waive collection of the overpayment.

On August 4, 1989, plaintiff requested Imminent Danger Pay under 37 U.S.C. § 310, and renewed this request on January 19, 1990. On January 16, 1992, plaintiff was advised that a supplement to the August 1987 pay voucher had been prepared to pay $110 for August 1987. The $110 were applied to the debt due the United States. As corrected, the balance due on the debt totaled $662.82 on January 19, 1992, based on $482.55 principal, $91.35 interest and $88.92 penalty.

On January 3, 1990, the Finance Center denied plaintiff's request for a waiver of the Government's claim. Waiver was precluded because plaintiff was partially at fault, in that when he had accepted the payment on September 2, 1987, for 16 days duty he knew he had performed duty for 13 days only. On January 19, 1990, plaintiff responded with the assertion that when he had accepted the payment for 16 days ADT he did not know the payment was made in error, and demanded a hearing to resolve the factual issue of whether he knew that payment for 16 days was a mistake. Plaintiff's January 19, 1990, appeal was forwarded to the GAO for review on April 9, 1990. On August 21, 1990, GAO's General Government Division confirmed, under 10 U.S.C. § 2774, the denial of plaintiff's request for a waiver. On May 21, 1991, the Finance Center informed plaintiff of the GAO decision. On January 16, 1992, the Finance Center denied plaintiff's request for a hearing. The letter stated: "Hearings are authorized, as appropriate, only in conjunction with Federal employees who are subject to salary offset to recoup the monies due." Since November 18, 1987, plaintiff had received no pay as an officer in the IRR which could be used to offset the debt plaintiff owed for the erroneous 3–day ADT payment.

Count III, as amended to September 17, 1992, asserts that 37 U.S.C. § 204 would apply to ADT plaintiff would have performed if he had not been improperly removed from the assignment to the 361st C.A. Brigade, and that he is entitled to pay for imminent danger 37 U.S.C. § 310 for 13 days ADT in Peru in August 1987. An officer in the Ready Reserve is required to participate in at least 48 scheduled drills or training periods per year, and to serve on active duty for training not more than 30 days per year. 10 U.S.C. § 270(a)—now 10 U.S.C. § 10147. The pay authorization for plaintiff's 13–day ADT in August 1987 is 37 U.S.C. § 204.

The foregoing facts show that plaintiff has been fully paid for all ADT he performed during the period he was assigned to a troop program unit eligible for compensation under 37 U.S.C. §§ 204 and 206, and for a supplement for imminent danger pay. There is no evidence that plaintiff performed any service after August 1987. By January 16, 1992, plaintiff knew that he had been paid all the money to which he was entitled, and that he had performed no duty in November 1987, or subsequently, that could be a basis for pay to offset the debt claimed by the Finance Center.

■ Plaintiff's dispute with the Finance Center has no bearing on whether plaintiff is eligible for compensation based on constructive service during the period he was assigned to the 361st C.A. Brigade. The actions of the Finance Center have no relationship to the validity of plaintiff's transfer effective November 18, 1987.

■ Defendant asserts under 28 U.S.C. §§ 1503 and 2508, a counterclaim for a debt based on payment made on September 2, 1987, for 3 days ADT in August 1987. Section 1503 provides: "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court." 28 U.S.C. § 1503 (1994). Section 2508 provides that upon trial of any suit in which the United States asserts any set off counterclaim or other demand,

"the court shall hear and determine such claim or demand both for and against the United States and plaintiff," and if upon the whole case, the plaintiff is indebted to the United States, the court shall render final judgment to that effect.

Defendant's counterclaim for a debt overpayment may not be recovered in this case unless plaintiff is entitled to recover on some part of his claims. *Mulholland v. United States,* 175 Ct.Cl. 832, 361 F.2d 237 (1966); *see also Somali Development Bank v. United States,* 205 Ct.Cl. 741, 508 F.2d 817 (1974). Absent such a recovery, defendant must try to collect the debt in other proceedings.

The debt owed for the 3–day period has been referred to the Internal Revenue Service. On April 14, 1997, the IRS applied $773.57 of an overpayment claimed on plaintiff's income tax return for December 31, 1996. Plaintiff asserts this constitutes a new cause of action against the Government in this case. This dispute with the IRS, as with plaintiff's dispute with the Finance Center, has little bearing on the claims in this case. Plaintiff may have a dispute with the IRS about overpayments in his 1996 income tax return. That dispute involves numerous legal and factual issues entirely separate and distinct from the claims in this case for compensation, or on the validity of his transfer in November 1987, to the IRR.

*Count IV*

Plaintiff alleges that his application to the General Officers Selection Board was denied in two consecutive years because he did not have the required 2–year command time. Command time could have been accumulated in assignments as Commander, Deputy Commander and Assistant Chief of Staff, Plans and Operations, in the 361st C.A. Brigade. Plaintiff contends he was not appointed to these assignments because of favoritism in the appointments and because appointments were made in violation of internal policies of the 120th ARCOM command. Count IV requests a court order that recommends the ABCMR review plaintiff's military records and grant compensatory credit for the requisite command time, and then to present the records to the next standby General Officers Selection Board to consider whether he

would have been selected for general officer. If plaintiff should be selected by the standby board, plaintiff then requests a court order recommending plaintiff be assigned to the next available general officer position.

Plaintiff supports the allegations and requested relief in Court IV by IG reports dated March 31, and May 5, 1988, and the ARPERCEN recommendation to the ABCMR dated November 30, 1988.

The IG reports were concerned with noncompliance with the internal policies of the 120th ARCOM. The reports specifically noted that "the stipulations of AR 140–10 (assignment procedures) were not violated." The IG reports were considered by the ABCMR, and the ARPERCEN recommendation was rejected by the ABCMR. On the entire record in this case, plaintiff has not shown that AR 140–10 has been violated.

■ To obtain a court order for Tucker Act collateral relief under 28 U.S.C. § 1491(a)(2), plaintiff must show a right to compensation. *United States v. Testan,* 424 U.S. 392, 404, 96 S.Ct. 948, 956, 47 L.Ed.2d 114 (1976); *Voge v. United States,* 844 F.2d 776 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988). All compensation authorized by 37 U.S.C. §§ 204 or 206 has been paid for service performed during plaintiff's assignment to the 361st C.A. Brigade. Since plaintiff performed no service after his transfer to the ARPERCEN Control Group on November 18, 1987, no compensation is owed under either statute. Collateral relief under Section 1491(a)(2), requested in Count IV, is not available.

*Count V*

■ Plaintiff was discharged from his reserve appointment on reaching mandatory retirement age because he did not elect to be assigned to the retired reserve. Plaintiff was encouraged on March 26, 1990, to elect to transfer to the retired reserve and was advised that "discharge will constitute complete separation from all military status." Plaintiff made no reply. Plaintiff asserts he did not elect to transfer because it possibly would preclude reinstatement in his former position and any further consideration as a general

officer. ARPERCEN construes 10 U.S.C. § 1064, and regulations thereunder, for reservists who have elected discharge rather than assignment to the retired reserve, to be ineligible for commissary stores of DOD. By letter dated April 11, 1991, ARPERCEN advised plaintiff that commissary privilege cards would be issued pending the outcome of the ABCMR action. Commissary cards were issued to plaintiff on December 19, 1991, and January 8, 1992.

Plaintiff requests a declaratory judgment and for an injunction continuing his eligibility for commissary privileges.

Plaintiff has not established that the ARPERCEN determination of eligibility for commissary privileges is incorrect. Plaintiff has not established by analysis of statute or regulation that after a complete discharge he should continue to be eligible for commissary privileges. As in Count IV, plaintiff has failed to demonstrate that a court order for Tucker Act collateral relief under 28 U.S.C. § 1491(a)(2) would be appropriate. The court may not issue a declaratory judgment or an injunction in this case. *Testan,* 424 U.S. at 398, 96 S.Ct. at 953; *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

*Second Amended Complaint*

After the Federal Circuit's November 20, 1995, mandate which affirmed the judgment that had dismissed the complaint in *Godwin,* plaintiff contended that the decision in *Banks v. Garrett* was flawed in four respects, and that these flaws resulted in a situation which precluded judicial review of a reservist's claims for monetary compensation. Plaintiff contended the only recourse was a further appeal to the Federal Circuit. Plaintiff stated:

> In seeking such a review, the Plaintiffs suggest they should be permitted to mold the issues in such a way that it will be incumbent upon the Court of Appeals to decide whether reservists have a right to judicial review following a purported unlawful removal.

3. The attachment was the July 31, 1987, order of the 120th ARCOM that ordered plaintiff to ADT

While this court is bound by the *Banks v. Garrett* decision, and correlatively the Plaintiffs are also bound by this decision, the government does not seem to be similarly bound: i.e., the government continues to pay reservists for their active duty training although in *Banks v. Garrett,* the Appellate court says reservists are not paid under 37 U.S.C. 204(a)(2).

To remedy this alleged impasse, plaintiff requested this case be permitted to serve as a vehicle for an appeal. Plaintiff was authorized to request leave to file an amended complaint. On September 3, 1996, plaintiff submitted to the Clerk copies of a proposed Second Amended Complaint. On September 11, 1996, plaintiff's motion to file a second amendment to the complaint as proposed was denied. The Clerk was directed to return, unfiled, plaintiff's proposed Second Amended Complaint because it sought the issuance of a restraining order to the Secretary of Defense. Plaintiff was told the request for injunctive relief was not authorized by statute, as in a bid protest, 28 U.S.C. § 1491(a)(3), and it was not appropriate in this military pay case. *Bowen v. Massachusetts,* 487 U.S. 879, 904, 108 S.Ct. 2722, 2737, 101 L.Ed.2d 749 (1988). Plaintiff was authorized to file a second amendment to the complaint to assert additional grounds for monetary compensation based on analysis of 37 U.S.C. §§ 204(a)(1), 204(a)(2) and 206.

The Second Amended Complaint, filed September 27, 1996, contains Counts VI and VII.

*Count VI*

This count includes the following allegations:

(a) The plaintiff performed certain active duty for training as a reservist pursuant to orders (copy attached[3]) issued under 37 U.S.C. 204(a)(2), the Active Duty Pay Mandating Statute.

(b) The plaintiff was paid for this duty, however, these orders were issued by the Defendant in clear violation of the rule of law announced in *Banks v. Garrett,* 901

in Peru for united forces exercises.

F.2d 1084 (Fed.Cir.1990), holding that reservists are not paid under the Active Duty Pay Mandating Statute, 37 U.S.C. § 204. According to the *Banks* decision, reservists performing active duty for training are paid only under the Reserve Pay Mandating Statute, 37 U.S.C. § 206.

(c) If *Banks* is good law, then the Plaintiff has a claim for pay due, because, as a reservist performing active duty training, he was paid under the Active Duty Pay Mandating Statute, § 204.

(d) Under 37 U.S.C. § 206, pay for reservists is computed at the rate of one day's pay for each "period of appropriate duty, at which the member is engaged for at least two-hours ..." The actual period of training is usually four-hours duration, with not more than two periods of training in any one day (32 CFR § 102.5). The result is, reservists (under § 206) receive two-days pay for each day of duty.

(e) The DOD has, with studied indifference, ignored the rule of law announced in *Banks* and continued to order reservists to perform active duty training (as required by 32 CFR 102.5(d)(2)), pursuant to orders issued under the Active Duty Pay Mandating Statute (37 U.S.C. § 204), and the DOD continues to pay reservists one-day's pay for each day of active duty training, whereas, a reservist is entitled to a day's pay, under 37 U.S.C. § 206, for each four-hour period of duty.

Plaintiff states he now sues for the differential pay to which he is entitled, under the Reserve Pay Mandating Statute, 37 U.S.C. § 206, because the DOD, in violation of the rule of law (*Banks*), published orders and paid him under the Active Duty Pay Mandating Statute, § 204. The period covered by this claim includes all active duty training performed during the 6 years immediately preceding the date the plaintiff filed his petition with the ABCMR. Plaintiff seeks correction of military records, conversion of ADT orders to show the duty was under 37 U.S.C. § 206, with 2 days pay for each day of duty, and reinstatement and consideration for promotion.

*Count VII*

This count repeats allegations (a) and (b), and argues the reverse of allegations (c) and (d). In Count VII, these allegations are:

(c) If *Banks* is good law, and if the government failed and refused to follow the rule of law announced in *Banks*, and instead, issued active duty training orders to Plaintiff under § 204, then the government waived its defenses and is now estopped from claiming the benefits derived from the rule of law announced in *Banks v. Garrett.* The Government not only issued active duty training orders under § 204 (attached), in violation of the rule of law announced in *Banks*, but the Defendant also paid the Plaintiff under the provisions of the Active Duty Pay Mandating Statute, § 204, therefore the Government may not claim as a defense the rule of law announced in *Banks*.

(d) As evidence the Government paid the Plaintiff under the provisions of the Active Duty Pay Mandating Statute (§ 204) for active duty training, attached is a set of orders issued to the Plaintiff. These orders contain a fund cite for 16 days active duty training.... Therefore, it is apparent, the Defendant issued active duty orders for training to the Plaintiff under the Active Duty Pay Mandating Statute, § 204, and not under § 206.

Count VII also includes the following allegations:

(e) The Government paid the Plaintiff for his active duty training under § 204, and 10 U.S.C. § 277 provides:

Laws [e.g., 37 U.S.C. § 204] applying to both Regular and Reserves shall be administered without discrimination—(1) among Regulars; (2) among Reserves; and (3) between Regulars and Reserves.

Therefore, the Plaintiff is entitled to the pay which he would have received during the period following his improper removal. The rationale for this argument is based on the conclusion he was not removed from his position by proper authority, therefore he continued to serve.

(f) Because the Plaintiff was paid under § 204, he has status (according to *Banks* ),

and therefore, the Plaintiff is entitled to pay for the lost active duty training as well as for inactive duty training, because the courts regularly accord such treatment to active duty officers improperly removed from their paid assignments.

Plaintiff states: that the court has jurisdiction over this claim because defendant issued ADT orders to plaintiff under the Active Duty Pay Mandating Statute, § 204, that the government waived its rights under *Banks* and is estopped from asserting the rule of law announced in *Banks*, that because defendant issued ADT orders under the Active Duty Pay Mandating Statute, § 204, the Plaintiff has status (*Banks*) and is entitled to the same treatment accorded an active duty officer improperly removed from his position. Plaintiff claims he is entitled to be reinstated in his former position with the pay, retirement points, and other benefits, including consideration for promotion, which he would have received.

In 1987, 37 U.S.C. § 204(a) provided:

(a) The following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service computed under section 205 of this title—

(1) a member of a uniformed service who is on active duty; and

(2) a member of a uniformed service, or a member of the National Guard who is not a Reserve of the Army or the Air Force, who is participating in full-time training, training duty with pay, or other full-time duty, provided by law, including participation in exercises or the performance of duty under section 3021, 3496, 3541, 8021, 8496, or 8541 of Title 10, or section 503, 504, 505, or 506 of Title 32.

In 1987, 37 U.S.C. § 204(g) provided:

(g) A member of a reserve component of a uniformed service is entitled to the pay and allowances provided by law or regulation for a member of a regular component of a uniformed service of corresponding grade and length of service whenever such member—

(1) is called or ordered to active duty for a period of more than 30 days; and

(2) is physically disabled in line of duty from injury, illness, or disease.

In 1987, 37 U.S.C. § 206(a) provided:

(a) Under regulations prescribed by the Secretary concerned, and to the extent provided for by appropriations, a member of the National Guard or a member of a reserve component of a uniformed service who is not entitled to basic pay under section 204 of this title, is entitled to compensation, at the rate of 1/30 of the basic pay authorized for a member of a uniformed service of a corresponding grade entitled to basic pay—

(1) for each regular period of instruction, or period of appropriate duty, at which the member is engaged for at least two hours, including that performed on a Sunday or holiday;

(2) for the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe; or

(3) for a regular period of instruction that the member is scheduled to perform but is unable to perform because of physical disability resulting from an injury, illness, or disease incurred or aggravated—

(A) in line of duty while performing—

(i) active duty for a period of 30 days or less; or

(ii) inactive-duty training; or

(B) while traveling directly to or from that duty or training (unless such injury, illness, disease, or aggravation of an injury, illness, or disease is the result of gross negligence or misconduct of the member).

In 1987, 37 U.S.C. § 206(b) provided:

(b) The regulations prescribed under subsection (a) of this section for each uniformed service, the National Guard, and each of the classes of organization of the reserve components within each uniformed service, may be different. The Secretary concerned shall, for the National Guard and each of the classes of organization within each uniformed service, prescribe—

(1) minimum standards that must be met before an assembly for drill or other

equivalent period of training, instruction, duty, or appropriate duties may be credited for pay purposes, and those standards may require the presence for duty of officers and enlisted members in numbers equal to or more than a minimum number or percentage of the unit strength for a specified period of time with participation in a prescribed kind of training:

(2) the maximum number of assemblies or periods of other equivalent training, instruction, duty, or appropriate duties, that may be counted for pay purposes in each fiscal year or in lesser periods of time; and

(3) the minimum number of assemblies or periods of other equivalent training, instruction, duty, or appropriate duties that must be completed in stated periods of time before the members of units or organizations can qualify for pay.

■ Plaintiff's allegations in Counts VI and VII reflect a misunderstanding of *Banks v. Garrett.* The allegations in Counts VI and VII, considered together, are confused and circular, and have no support in the applicable statutes and regulations. First, plaintiff is wrong in his contention that reservists may not be paid for ADT under 37 U.S.C. § 204(a)(2). The authority to pay for the training of a reservists for 48 scheduled drills each year is 37 U.S.C. § 206. The authority to pay up to 30 days for ADT each year by its terms is 37 U.S.C. § 204(a)(2). In both situations, the service must actually be performed. Under the pay mandating statute, a reservist is not entitled to compensation at the prescribed rate unless he is ordered to perform and actually performs the work. Compensation is not based on status as a reservist. *Banks v. Garrett,* 901 F.2d at 1087; *Dehne,* 970 F.2d at 894; *Ayala v. United States,* 16 Cl.Ct. 1 (1988).

In *Banks v. Garrett,* 901 F.2d at 1084, the court addressed the statutory basis for monetary claims by members of military reserve components alleging wrongful removal. *Banks* holds that members of reserve components may not maintain actions for the pay and allowances they might have received for performing inactive training duties, absent their having performed those duties. *Accord Dehne,* 970 F.2d at 890.

■ *Banks* distinguished between those reservists who are on continuous active duty under Section 204(a)(1) and entitled to pay and allowances as the result of their status, from those reservists who were participating pursuant to orders for full time training or training duty with pay under Section 204(a)(2). Such reservists are not on continuous active duty and have no entitlement to pay and allowances unless they actually perform training duty.

Defendant points out that plaintiff's allegation are based upon a misreading of the words "[not a Reserve of the Army or Air Force]" in *Banks,* at 1087. These words may suggest that Reservists of the Army and Air Force cannot be paid under Section 204(a)(2). The statute, however, actually reads, "a member of the uniformed service, *or a member of the National Guard* who is not a Reserve of the Army of Air Force, who is participating in full time training." (Emphasis added). The language "not a Reserve of the Army or Air Force" thus refers to "National Guard" and not to "a member of the uniformed service." This language would cover, for example, a National Guardsmen in state service as opposed to federal service, who was performing active training. The statute, as is clear from it's plain language and a reading of the entire Banks decision, does not exclude reservists from pay under 37 U.S.C. § 204.

■ While in Peru pursuant to lawful orders, plaintiff was on ADT under 10 U.S.C. § 270(a)(1). He did not serve in Peru on continuous active duty. He voluntarily served as a member of the selected reserve and periodically performed training duties. Members of reserve components not serving on continuous active duty become entitled to receive compensation solely when they actually perform training duties or active duty. Just as Government employee is not entitled to the benefits of a position until duly appointed to it, *Testan,* 424 U.S. at 402, 96 S.Ct. at 955, reserve members are not entitled to pay until they receive official orders and actually perform the authorized duty or training.

The only right to payment for constructive service under these statutes is when a reservist is unable to perform because of physical disability resulting from an injury, illness, or disease incurred or aggravated in line of duty while performing active duty or inactive duty training. 37 U.S.C. §§ 204(g)(1) and 206(a)(3).

*Banks* held that Section 204 did not give a right to back pay to a reserve member not on active duty when transferred. Plaintiff was not on active duty when transferred from his unit to the IRR. Plaintiff, like the plaintiff in *Banks v. Garrett*, may not receive back pay for duty he purportedly could have performed in the future if he had been retained.

## CONCLUSION

On the basis of the facts and applicable law, plaintiff's transfer to the IRR effective November 18, 1987, was lawful and valid, and plaintiff is entitled to no compensation for constructive service in the active reserves after his transfer. Defendant's motion for summary judgment on Count I through VII is allowed. Defendant's motion for summary judgment on its counterclaim is denied. Plaintiff's motion for summary judgment on Counts I through VII is denied. The Clerk is directed to enter judgment for defendant and to dismiss the complaint as amended. No costs.