**Colonel David W. PALMER, II, Plaintiff–Appellant,**

**v.**

**UNITED STATES, Defendant–Appellee.**

**No. 97–5129.**

United States Court of Appeals, Federal Circuit.

Feb. 23, 1999.

Colonel David Palmer, II, pro se, of Fort Walton Beach, FL.

John S. Groat, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director.

Before PLAGER, RADER, and GAJARSA, Circuit Judges.

PLAGER, Circuit Judge.

This is a military pay case. The United States Court of Federal Claims rendered judgment against Colonel David W. Palmer II on his claim for pay he alleged to have been wrongfully denied. *See Palmer v. United States*, 38 Fed. Cl. 316 (1997). Col. Palmer appeals the judgment. Because Col. Palmer, as an officer not on regular active

duty, is not entitled to pay for duty he did not perform, we affirm the decision of the Court of Federal Claims.

## BACKGROUND

After five years of active duty as a regular officer in the U.S. Army, Col. Palmer became a member of the U.S. Army Reserve in October 1969. Col. Palmer served in a Ready Reserve unit—the 361st Civil Affairs Brigade, in Pensacola, Florida—from May 1970 until 1987. As a ready reservist, Col. Palmer performed forty-eight paid drills each year, as well as an annual period of active duty.

In September 1984, the reserve unit commander assigned Palmer to the position of Assistant Chief of Staff, Special Functions. This assignment was for "an indefinite period or until relieved by the Commander." In June 1987, a Selective Retention Board recommended Col. Palmer for continuation in the unit for another two-year period. Although the Commanding General approved the Board's recommendation, three months later a new commander ordered Col. Palmer's transfer out of the unit. The new commander's decision was based on the assumption that Col. Palmer's position was a tenured one with a three-year tour length, and that there was a lack of an alternative position of increasing responsibility. Before Col. Palmer's removal, the senior military commander reviewed the proposed involuntary transfer and denied relief.

Consequently, in November 1987, the Army transferred Col. Palmer out of the ready reserve unit to the Army Personnel Center, Control Group (Reinforcement), in St. Louis, Missouri. Following the transfer, Col. Palmer no longer drilled with or received pay from a reserve unit.

Col. Palmer appealed his transfer to the Army Board for the Correction of Military Records ("ABCMR"). Under Army regulations, an officer may serve in a "command" or "principal" staff position for "no more than 3 years." Army Regulation 140–10, ¶ 2–18a. At the end of three years, the unit commander has the option of reassigning the

officer within the unit. Otherwise, the Army can transfer the officer from the unit. There is an exception to the three-year limitation for officers in a "special" or "personal" staff position. *See* Army Regulation 140–10, ¶ 2–18c. Col. Palmer argued that his position was not tenured, and thus, not subject to the three-year tenure limitation. An advisory opinion requested by the ABCMR from the Army Reserve Personnel Center found merit in Col. Palmer's claim; nevertheless, the ABCMR affirmed the transfer, citing a new basis of "command prerogative." The ABCMR denied reconsideration in June 1991.

After the ABCMR declined to reconsider its decision, Col. Palmer filed suit in the U.S. Court of Federal Claims for back pay, reinstatement, and correction of his records. *See* 28 U.S.C. § 1491(a)(2) (1994). On cross-motions for summary judgment, the Court of Federal Claims found that even if the ABCMR's decision were improper, Col. Palmer was not entitled to compensation for drills unless he was ordered to perform and actually performed the work. *See Palmer*, 38 Fed. Cl. at 330. Col. Palmer is now before this court appealing the dismissal of his claim by the Court of Federal Claims. We have jurisdiction to hear this appeal under 28 U.S.C. § 1295 (1994).

## DISCUSSION

### A.

On review of the record in this case, and after reading the thorough and extensive opinion of the trial judge, we cannot help but be struck by the procedural morass with which the trial judge had to struggle. Part of this difficulty may be attributed to the fact that Col. Palmer appeared before the court, as he does here, *pro se*,[1] but a substantial portion must be laid at the doorstep of Government counsel. The Government insisted, as it so often does, that a plaintiff whose case is, in the Government's view, less than meritorious is a plaintiff with a case over which the Court of Federal Claims has no jurisdiction. As the trial court observed, "[d]efen-

---

1. Col. Palmer has both a military and legal background; the Court of Federal Claims noted that

he is a member of the Florida Bar and was in the general practice of law until 1964.

dant's continued assertion of a motion to dismiss for lack of subject matter jurisdiction reflects a persistent confusion over the meaning of 'jurisdiction' as that term applies to claims against the United States under the Tucker Act." *Palmer,* 38 Fed. Cl. at 320.

The trial court politely but firmly explained to the Government the difference between a court's general power to adjudicate in specific areas of substantive law, on the one hand, and the question of whether in a specific case a court is able to exercise its general power with regard to the facts peculiar to the specific claim, on the other. The former is a question of a court's subject matter jurisdiction, and is properly raised by a Fed.R.Civ.P. 12(b)(1) motion; the latter is properly addressed as a question of whether the plaintiff has stated a claim upon which relief can be granted, and is raised by a Fed.R.Civ.P. 12(b)(6) motion (the Court of Federal Claims denominates this an RCFC 12(b)(4) motion).

As the trial court sagely noted, when dealing with the Tucker Act, issues of sovereign capacity and consent to be sued cloud jurisdictional concepts. *See Palmer,* 38 Fed. Cl. at 320. This makes it even more important that parties before the court, and particularly the Government since it is always a party in a Tucker Act suit, make the effort to understand and respect the difference. (Oddly enough, off and on during the course of the six years the matter was before the trial judge, the Government apparently acknowledged this distinction and included an alternative RCFC 12(b)(4) motion at various points in its papers.)

In any event, following oral argument before the Court of Federal Claims, that court ruled, correctly, that it clearly had subject matter jurisdiction – Col. Palmer had alleged that the Government owed him money, a claim based on military service for which he had not been paid. *See Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679, 686–88 (Fed.Cir.1992) (noting that well-pleaded allegations in the complaint are sufficient to overcome a challenge to subject matter jurisdiction). The court also denied the Government's motion to dismiss for failure to state a claim upon which relief can be granted, but ruled that it had an inadequate record for summary disposition of the case. *See Palmer,* 38 Fed. Cl. at 319. After extensive submissions from both parties, and after the complaint was twice amended and additional counts added, the trial court ruled that it would now treat the case as having cross-motions for summary judgment; ultimately, the court granted the Government's motion and rendered judgment for the Government. *See id.* at 331. Under the circumstances, the trial court's decision to treat the case on its merits rather than as a 12(b) motions case was eminently sound.

### B.

Turning now to the merits, Col. Palmer alleges that he was wrongfully transferred from his pay position with the 361st Civil Affairs Brigade, and thus was denied the opportunity to perform duties for pay. Since the transfer into a non-pay billet was wrongful, he argues, the resulting denial of the opportunity to engage in drills for pay was also wrongful. His conclusion is that the Government owes him the pay he would have earned but for the wrongful transfer.

The Government asserts that an officer in Col. Palmer's situation is entitled to pay only when he performs specified duties. Even if the transfer was wrongful, in the absence of Col. Palmer's actually having performed duties for which the Government is obligated to pay, there is no debt for which the Government is liable. Put in terms of Tucker Act jurisprudence, the Government asserts that Col. Palmer does not have a money-mandating statute that allows the Court of Federal Claims to render judgment in his favor. The Government is correct.

The military pay statutes, the military's administration of those statutes, and this court's precedents recognize that there are two basic categories of pay entitlements for military service. One category relates to service members serving on full-time active duty. This includes those members for whom service is a professional career, as well as those individuals, following in this country's tradition of the citizen-soldier, who

though not initially trained as professionals serve their country full-time. For purposes of pay, the statutes treat both the professional and the citizen-soldier alike. By virtue of their status, arising from full-time active duty service, they are entitled to the pay and allowances attributable to their rank and station. *See* 37 U.S.C. § 204(a)(1) (1994) ("The following persons are entitled to the basic pay ... a member of a uniformed service who is on active duty...."). If they are wrongfully denied the benefits of that status, they have a cause of action under the Tucker Act; section 204(a)(1) is money-mandating. *See, e.g., Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1997); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 810–11 (1979) (en banc).

The second category of pay entitlement for military service relates to those persons not in full-time active duty service. These members are invariably attached to one or another Reserve entity. Some Reserve units provide pay billets for their Reserve officers, others do not. A pay billet usually means that the officer is obligated to engage in some number of drills each year—some units drill one evening a week, some one or two weekends a month—as the particular service activity may require. *See* 10 U.S.C. § 270(a)(1) (1988) (recodified at 10 U.S.C. § 10147(a)(1) (1994)). In addition, Reservists in a pay billet typically perform a period of active duty for training each year, usually of two weeks duration. *See id.* Members in such pay billets are paid by the military only for drills actually attended, *see* 37 U.S.C. § 206(a)(1) (1994), and for active duty for training actually performed, *see* 37 U.S.C. § 204(a)(2) (1994).

■ The consequence of this difference in pay entitlement between full-time active duty personnel and those serving part-time reserve duty is that a member who is serving in part-time reserve duty in a pay billet, or was wrongfully removed from one, has no lawful pay claim against the United States for unattended drills or for unperformed training duty. *Cf. Dehne v. United States,* 970 F.2d 890, 894 (Fed.Cir.1992) (finding that the combination of 37 U.S.C. § 206(a) and 10 U.S.C. § 1552(c) fails to establish a right to back pay for constructive service by a National Guard officer who was transferred from active service to the reserves); *Banks v. Garrett,* 901 F.2d 1084, 1087 (Fed.Cir.1990) (concluding that Banks was not entitled to back pay under either 37 U.S.C. §§ 204(a) or 206(a)(1) because he performed no reserve unit drills after his lawful transfer). This is true whether the failure to drill was by election of the member, or by decision of the service involved.

■ The gravamen of Col. Palmer's case is that the Army wrongfully denied him the opportunity to drill and to perform training duty when it transferred him from his pay billet in the 361st Civil Affairs Brigade to inactive status in 1987. Though the trial court was of the view that the transfer was lawful and valid, *see Palmer,* 38 Fed. Cl. at 331, Col. Palmer contends otherwise. We need not engage that question directly. Before the trial court could grant Col. Palmer collateral remedies such as correction of records and reinstatement to a position from which he was wrongfully removed, he must first establish that, under the Tucker Act, he has a money-mandating statute that entitles him to a pay remedy. *See, e.g., Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir. 1997) (noting requirement of a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States); *Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir.1995). For the reasons explained, this he cannot do.

### C.

Col. Palmer may complain that this means that he is without recourse before the Court of Federal Claims for his allegedly wrongful transfer, when a service member on regular active duty would have such recourse if similarly treated. Col. Palmer would be correct in his complaint. This anomaly is the result of the juxtaposition of the Supreme Court's view of the Tucker Act and its requirement that there be a separate money-mandating act, *see United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), with the way in which Congress has written the military pay statutes for inactive duty members. If Col. Palmer and his fellow

Reservists believe that this result is unfair, and from the viewpoint of access to the courts it may well be, the remedy is to petition Congress to change the nature of the pay mandate, or to provide a separate basis for relief in the Court of Federal Claims, independent of a money-mandated claim. Absent that, we have no grounds on which to disturb the conclusion of the trial court.

The judgment in favor of the Government is

*AFFIRMED.*