**Robert B. ANDERSON, III, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 03–767–C.**

United States Court of Federal Claims.

Feb. 17, 2004.

---

**452**

Gary R. Myers, Weare, New Hampshire, for plaintiff.

Michael O'Connell, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Assistant Attorney General Peter D. Keisler, David M. Cohen, Director, Commercial Litigation Branch, and James M. Kinsella, Deputy Director, Commercial Litigation Branch, Washington, D.C. Major Gary Corn and Major Susan Burger, United States Army, Arlington, Virginia, were of counsel.

## OPINION AND ORDER

LETTOW, Judge.

This military pay case is before the Court on defendant's motion to dismiss or, in the alternative, for judgment upon the administrative record, and plaintiff's cross-motion for judgment upon the administrative record. Plaintiff, Major Robert Anderson ("Major Anderson" or "Anderson"), seeks pay and separation pay related to time that he avers he would have served in the Army had he not been passed over for promotion to captain in 1993 and consequently not retained on active duty. Notably, after being passed over and leaving active duty, Major Anderson subsequently made a successful career in the Army Reserves. Importantly also, he was granted substantial relief by the Army Board for Correction of Military Records ("ABCMR") in May 2000. His complaint in the instant case concerns the ABCMR's denial of a subsequent request by him for further relief. The cross-motions have been fully briefed, and a hearing was held on January 7, 2004. For the reasons set out below, the Court grants the government's motion to dismiss for failure to state a claim.

## BACKGROUND

The events underlying this case date back to Major Anderson's receipt of an adverse Officer Evaluation Report ("OER")[1] in Sep-

---

1. Because the adverse OER has been removed from Maj. Anderson's official record and because

tember 1991, when he was a first lieutenant serving on active duty in the Army. Compl. ¶ 4. Anderson avers (and the ABCMR agreed) that as a result of the inclusion of the negative OER in his official record, Anderson was passed over twice for promotion to captain in 1993. Compl. ¶¶ 4–5; A.R. 56–62.[2] Because of his non-selection for promotion and retention on active duty, Anderson separated from the Army in August of 1994. A.R. 121; Compl. ¶ 5.[3]

Anderson pursued two separate paths to make the best of his situation. First, he continued to seek Army service as a member of the Reserves. From 1995 to 1999, he served on temporary active duty as a member of the reserve component pursuant to 10 U.S.C. § 12301(d), which authorizes the voluntary assignment of reserve-component soldiers to full-time active service for specific periods of time.[4] In 1999, he was accepted into the Active Guard Reserve ("AGR") program and undertook full-time active duty status in that program.[5] He was promoted to the rank of captain in the Reserve as of October 16, 1995, A.R. 179, and then to major in the Reserve effective July 19, 2000. A.R. 20.

Second, concurrently with his Reserve service, Anderson sought relief from the Army respecting his involuntary separation from active duty in 1994. Anderson challenged the adverse OER before the Army Officer Special Review Board ("OSRB") on three occasions—once before his separation, in 1992, A.R. 229–30, and twice thereafter in 1994, A.R. 232, and 1997, A.R. 203. Compl. ¶ 6.[6] Anderson's first two filings with the OSRB were returned to him without consideration of his requests due to insufficient supporting evidence. Pl.'s Opp. at 4; Hr'g Tr. at 24–25; A.R. 231, 233. On Anderson's third attempt, the OSRB ruled in January 1998 that the adverse OER should be amended to remove the negative comments in the OER by his senior reviewer and replaced with a neutral statement indicating that the reviewer did not have adequate time to provide an appropriate evaluation. The OSRB did not order that the OER be stricken in its entirety. A.R. 59 at ¶ 16; 78–79.

Subsequent to the OSRB's decision, Anderson applied to the ABCMR later in 1998 seeking to have the entire OER stricken from his record and requesting pay for the time that he allegedly would have served had he been promoted and remained in the military. A.R. 63. Anderson did not request to be reinstated in conjunction with the correc-

the events underlying such OER are not relevant to determining the currently pending motions, the Court need not address the particular circumstances surrounding that OER.

2. "A. R." refers to the Administrative Record considered by the ABCMR.

3. His separation was dictated by 10 U.S.C. § 631(a)(1) because he had been passed over for promotion to captain by two promotion boards:

 (a) [E]ach officer of the Regular Army, Regular Air Force, or Regular Marine Corps who holds the regular grade of first lieutenant and has failed of selection for promotion to the regular grade of captain for the second time ..., [and] whose name is not on a list of officers recommended for promotion to the next higher regular grade shall—
 (1) be discharged on the date requested by him and approved by the Secretary of the military department concerned, which date shall be not later than the first day of the seventh calendar month beginning after the month in which the President approves the report of the board which considered him for the second time.

4. From October 1995 to April 1996, Anderson served on active Army duty as an intelligence officer of the Customs Service. A.R. 149. Similarly, in 1996–97 and 1997–98, he served with an analysis team and as an intelligence officer of the Customs Service. A.R. 151, 153. During 1997, he also served for a time as an intelligence officer with the Federal Bureau of Investigation, A.R. 155, and in 1999, he was a general military intelligence analyst. A.R. 164.

5. The AGR Program operates under Army Regulation 135–18 and applies to Army National Guard and United States Army Reserve ("USAR") "soldiers serving on active duty or full-time National Guard duty in the AGR Program in support of the Reserve Components of the Army." Army Reg. 135–18 at i ("Applicability"). Major Anderson has served with the Reserve Officer Training Corps unit at St. Johns University. A.R. 166–69, 183.

6. The OSRB has the function of reviewing OER appeals alleging bias, prejudice, and inaccurate or unjust ratings. Its proceedings are administrative and non-adversarial in nature. *See* Army Reg. 623–105.

tion to his record. In his application to the ABCMR, Anderson stated:

> Since the injustice to my record has now been amended, my record is now substantially better than what the promotion board used in making its determination when they discharged me. Therefore, *I wish to be reconsidered for the promotion* I was denied. *If that promotion board finds in my favor, I do not wish to be placed back on active duty, but instead compensated for the full monetary equivalence of that promotion.* For in spite of the amendments to my record, the window of opportunity for re-entrance onto active duty has passed, since my date of rank would be back dated to April of 1994. A back dated promotion now would mean that I would be up before the Major's promotion board within a couple of years without ever having been afforded the time necessary to gain the skills and experience needed to hold that office.

A.R. 65–66 ("Request for Relief" (undated) (second emphasis added)). This request was also incorporated verbatim into Major Anderson's second appeal to the ABCMR. A.R. 31–32.

After reviewing his file and considering his request, in February 2000, the ABCMR granted Anderson relief by striking the adverse OER from his record and ordering that his corrected records be placed before a special promotion board for consideration for promotion to captain. A.R. 53–62. The special promotion board approved Anderson for promotion to captain in April 2000, with an effective date of rank of May 1, 1994. A.R. 181–82. In May 2000 the ABCMR gave approval for Anderson to receive captain-level pay and allowances for the period between May 1, 1994, and his separation on August 14, 1994, as well as separation pay as

a captain for his release from active duty on August 15, 1994. A.R. 47. Both of these pay awards were net of the pay he had previously received as a first lieutenant. A.R. 19.

On June 7, 2000, Anderson filed a second appeal with the ABCMR, A.R. 27, seeking, in light of his newly-granted promotion, "constructive credit and to be constructively compensated for the years of active duty he should have served as a [c]aptain plus separation pay," Compl. ¶ 9. The ABCMR denied this request in May 2001. A.R. 12. Anderson sought reconsideration of that denial in September 2001. A.R. 7–11. His reconsideration request was denied in January 2002, A.R. 1, and he filed the present case in this Court on April 10, 2003, challenging the ABCMR's denial.

Both before the ABCMR and in this Court, Anderson has requested "constructive compensation" for time that he purportedly would have served in the military had he not been passed over for promotion.[7] In an effort to address the concern of double-compensation, he has clarified that his monetary request now consists of (a) the sum of active duty pay as a captain from August 15, 1994 (date of separation) through January 2002 (separation date if non-selected to major for second time) and separation pay at January 1, 2002 for non-selection to major, (b) less separation pay received on August 15, 1994 ($20,596.68) for non-selection to captain, and income derived from all sources each calendar year beginning August 16, 1994 and ending December 31, 2001 in any amount equal to or less than captain's pay. Compl. ¶ 12.[8]

## STANDARDS FOR DECISION

### *Motion to Dismiss*

The jurisdiction of a federal court must be established as a threshold matter before the

---

7. Under the Military Pay Act, "a member of a uniformed service who is on active duty" is "entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204(a). An officer's right to pay pursuant to Section 204 "continues until the officer is properly separated from the service." *Tippett v. United States*, 185 F.3d 1250, 1255 (Fed.Cir.1999) (citing *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 810 (1979) (en banc)). "Constructive service" in the military is a necessary predicate for back pay, and

constructive service only occurs if a discharge or separation is voided. *Adkins v. United States*, 68 F.3d 1317, 1326–27 (Fed.Cir.1995).

8. This request hypothetically assumes that, if restored to duty as a captain on the active-duty list, Anderson would be passed over by two selection boards for promotion to major and thus that he would be involuntarily discharged pursuant to 10 U.S.C. § 632(a).

court may proceed to the merits of any action. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The party who asserts jurisdiction, *i.e.,* Major Anderson in this instance, bears the burden of proving that the Court has jurisdiction over the subject matter of its complaint. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998); *Ware v. United States,* 57 Fed.Cl. 782, 784 (2003); *Clearwater Constructors, Inc. v. United States,* 56 Fed.Cl. 303, 307 (2003). In ruling on a motion to dismiss for lack of jurisdiction, the Court must construe the allegations of the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Vanalco, Inc. v. United States,* 48 Fed.Cl. 68, 73 (2000). Additionally, when the underlying facts establishing jurisdiction are put in question, the Court may look at evidentiary materials beyond those facts included on the face of the pleadings. *McNutt,* 298 U.S. at 189, 56 S.Ct. 780; *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993); *Ware,* 57 Fed.Cl. at 783 n. 1.

In acting on a motion to dismiss a complaint for failure to state a claim on which relief can be granted under Rule 12(b)(6), a court must accept as true the facts alleged in the complaint, *Pi Elecs. Corp. v. United States,* 55 Fed.Cl. 279, 285 (2003) (citing *Davis v. Monroe County Bd. Of Educ.,* 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)), and must construe all reasonable inferences in favor of the non-movant, *Pi Elecs.,* 55 Fed.Cl. at 285 (citing *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001)).

### Summary Judgment Upon the Administrative Record

For motions under RCFC 56.1, *i.e.,* for summary judgment upon review of decisions on the basis of an administrative record, this Court applies the same standard as that applied to motions for summary judgment under RCFC 56. *See* RCFC 56.1(a); *Roth v. United States,* 56 Fed.Cl. 239, 244–45 (2003). Summary judgment is appropriate if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

This Court's role in military record cases is a limited one. "It has long been established that it is 'beyond the institutional competence of courts to review' the substance of decisions that have been left exclusively to the discretion of the military." *Roth,* 56 Fed.Cl. at 244 (quoting *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002)). *See also Groves v. United States,* 47 F.3d 1140, 1144 (Fed.Cir. 1995) ("no court is qualified to review the substantive merits of a decision [committed to the discretion of the military], so long as the decision comports with any procedural standards mandated by statute or regulation"). Accordingly, when the Court, in the context of a motion made under Rule 56.1, is "called upon to review a decision of a corrections board, ... the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998), *cert. denied* 528 U.S. 809, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999); *see also Wronke v. Marsh,* 787 F.2d. 1569, 1576 (Fed.Cir.1986); *Sanders,* 594 F.2d at 811; *Roth,* 56 Fed.Cl. at 245.

### DISCUSSION

*Subject Matter Jurisdiction—Rule 12(b)(1)*

The distinction between a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and one for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6) can be a subtle one. The Court of Appeals for the Federal Circuit has pointed to

the difference between a court's general power to adjudicate in specific areas of substantive law, on the one hand, and the question of whether in a specific case a court is able to exercise its general power with regard to the facts peculiar to the specific claim, on the other. The former is a question of a court's subject matter jurisdiction, and is properly raised by a [Rule] 12(b)(1) motion; the latter is properly ad-

dressed as a question of whether the plaintiff has stated a claim upon which relief can be granted, and is raised by a [Rule] 12(b)(6) motion.

*Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999). Here, the government has invoked both of these rules.

Whether this particular case falls within the subject matter jurisdiction of the Court of Federal Claims is governed by the Tucker Act, 28 U.S.C. § 1491. This statute provides that the Court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, it is well established that the Tucker Act is not sufficient, in and of itself, to confer jurisdiction upon the Court. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Rather, a plaintiff must identify some independent basis within a contract, a federal statute or regulation, or the Constitution upon which it is entitled to monetary payment from the federal government. *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998) (reversing a transfer to the Court of Federal Claims from a district court absent a determination that the plaintiff had properly stated a claim for money damages).

In his complaint, Major Anderson did not identify a specific statutory or contractual basis for his claim for relief. Rather, he simply stated that "the ABCMR failed to properly compensate [him] for the constructive active duty time and separation pay differential he would have received had [he] not been wrongfully removed from active duty." Compl. ¶ 18. The government has argued that this averment should be interpreted to mean that "Major Anderson is seeking monetary damages in equity, unrelated to any money-mandating statute." Def.'s Mot. at 7. Ordinarily, as noted *supra,* at 454 n. 7, the Military Pay Act would provide a money-mandating statutory basis for a claim in this

Court seeking redress for an improper discharge. In this case, however, Major Anderson expressed his request for relief from the ABCMR in terms tending to invoke an equitable basis for an award rather than a strictly statutory one:

> In civil cases of like substance, the threshold for compensation is harm. I have been harmed; my career has been harmed. I am not seeking anything more than a fair compensation for that harm. For I can not [*sic*] seek restitution from the men who perpetrated that harm upon me; they are immune to prosecution. My only recourse is to seek justice through the ABCMR. So I beseech you to do the right thing, and grant my request.

A.R. 29. And, subsequently, in moving the ABCMR to grant him further relief beyond that granted by the Board providing pay and separation pay as a captain dating back to 1994, Maj. Anderson averred that "there is no statutory prohibition from granting relief. The sole basis for relief denial was the Board's interpretation of equity." A.R. 9 at ¶ 10.

 As a jurisdictional matter, this Court lacks general authority to grant relief, monetary or otherwise, on purely equitable grounds. *See Bowen v. Massachusetts,* 487 U.S. 879, 893–94, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *Glidden Co. v. Zdanok,* 370 U.S. 530, 557, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962). The Court possess limited authority to award equitable relief only when such an award would be ancillary to an affirmative obligation of the federal government to pay money damages. *See Caldera,* 159 F.3d at 580 ("equitable relief [in Tucker Act suits] must be 'an incident of and collateral to' a money judgment") (quoting 28 U.S.C. § 1491(a)(2)). The ABCMR, however, is not limited by the same constraint and is free to make decisions based on equitable grounds. *See* 10 U.S.C. § 1552(a)(1) (military records may be corrected to "remove an injustice"); *Reale v. United States,* 208 Ct.Cl. 1010, 1011–12, 1976 WL 23815 (1976) (describing actions a corrections board could take that the Court of Claims could not). Indeed, the Board made specific reference to its weighing of the equities in this case by stating in its Memoran-

dum of Consideration that "there is no standard of fairness which warrants payment" of Major Anderson's request. A.R. 25.[9] However, the Court does not accept the government's contention that the Board made its decision solely "sitting in equity." Def.'s Mot. at 8. The Board's Memorandum of Consideration contains a lengthy recitation of the statutes and regulations upon which it based its determination. A.R. 20–22.

■ During briefing of the pending motions, Major Anderson has invoked the Military Pay Act, 37 U.S.C. § 204, as the basis for his claim. Pl.'s Reply at 1. That Act has been held to be a money-mandating statute sufficient to confer jurisdiction upon this Court. *Palmer*, 168 F.3d at 1314; *Caldera*, 159 F.3d at 581 ("As far as military personnel are concerned, 37 U.S.C. § 204 (1994) serves as a money-mandating statute."). *See also* supra, at 454 n. 7. Accordingly, because Major Anderson's allegations concern relief pursuant to the Military Pay Act, this Court has subject matter jurisdiction over Major Anderson's claim.[10]

*Failure to State a Claim—Rule 12(b)(6)*

■ Major Anderson, just as any other plaintiff seeking redress pursuant to the Military Pay Act, or indeed any money-mandating federal statute, must demonstrate that

his specific circumstances permit him to rely upon such statute. As the Court of Appeals explained in *Palmer*, consideration of this issue is appropriate under a Rule 12(b)(6) analysis. 168 F.3d at 1313. Such an analysis requires an examination of the facts peculiar to the plaintiff's claim and a determination of whether those facts fit within the framework required to justify payment. The requirements of the Military Pay Act for entitlement to payment must be strictly applied. *Id.* at 1314 (If not actively serving, reservists are paid only for drills actually attended or training actually performed, and there is no lawful back pay claim for unattended drills or unperformed training.). *See also Ainslie v. United States*, 55 Fed.Cl. 103, 106 (2003), *aff'd*, 355 F.3d 1371 (Fed.Cir. 2004) (denying award under the civilian Back Pay Act, 5 U.S.C. § 5596, because the plaintiff did not meet all statutory requirements to be considered an "employee" during the time for which he sought payment). Major Anderson relies upon the "constructive service" doctrine under which "military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation." *Christian v. United States*, 337 F.3d 1338, 1347 (Fed.Cir.2003). "They are, therefore, entitled to back pay and benefits

9. The government argues that this Court lacks jurisdiction to review a Board decision when that decision is based on grounds upon which this Court itself could not grant relief. Def.'s Mot. at 9–10; Hr'g Tr. at 8. Beyond noting that this Court lacks equitable jurisdiction, defendant cites no support for this contention, and the Court finds that it has no merit insofar as it concerns a case that is otherwise properly within the Court's jurisdiction. In suits under the Tucker Act and Military Pay Act, this Court's authority to review correction board decisions is well established. *Martinez v. United States*, 333 F.3d 1295 (2003); *Sanders*, 594 F.2d at 811; *Ewing v. United States*, 36 Fed.Cl. 159, 163 (1996).

10. The six-year statute of limitations applicable to Tucker Act suits, codified at 28 U.S.C. § 2501, is jurisdictional in this Court. Although the parties did not address the issue of whether Major Anderson's claims were time-barred, the Court *sua sponte* has determined that they are not. In cases challenging a service member's discharge from the military and seeking back pay based on constructive service, the general rule is that the plaintiff's claim accrues on the date of actual

discharge from the service. *Martinez v. United States*, 333 F.3d 1295, 1310 (Fed.Cir.2003) (en banc). Invocation of a permissive appeal to a board of corrections, such as the ABCMR, does not toll a plaintiff's cause of action when the board denies the plaintiff's request. *Id.* at 1304. However, "[a] different analysis applies when the correction board has granted relief and the service member seeks to enforce or challenge the implementation or scope of the remedial order, since in those cases the question whether the original discharge was lawful is no longer in issue and accrual therefore does not occur at the time of the allegedly improper discharge." *Id.* at 1315 n. 4. Major Anderson's cause of action in the present case accrued in May 2000 when the ABCMR granted retrospective relief in the form of a captain's pay. His subsequent request to the ABCMR challenged the implementation and scope of the ABCMR's May 2000 remedial order, A.R. 12, and his complaint reiterates the subsequent implementation claim in modified form. The complaint was filed in April 2003, well within the six-year period prescribed by Section 2501, when the triggering date is understood to be May 2000, as *Martinez* commands.

for the intervening period, i.e., retroactive to their original separation from service." *Id.* To gain the benefit of the constructive-service doctrine and accordant payment pursuant to the Military Pay Act, the claimant must demonstrate that he or she is "ready, willing, and able" to resume his or her military duties. *Groves v. United States,* 47 F.3d 1140, 1147 (Fed.Cir.1995) (citing *Piccone v. United States,* 186 Ct.Cl. 752, 407 F.2d 866, 876 (1969)); *Graves v. United States,* 176 Ct.Cl. 68, 76, 1966 WL 8807 (1966).

■ That Major Anderson specifically abjured reinstatement, A.R. 65–66, draws into question his ability to rely on the constructive-service doctrine. The government argues that because Major Anderson chose not to return to active duty, he is barred from any recovery under the Military Pay Act. Def.'s Mot. at 13–15. Major Anderson has argued, however, that his choice not to be reinstated was not voluntary and the requirement that he submit to reinstatement should not apply to him. He asserts that the circumstances in which he found himself when he filed his request for relief, due in part to the "glacial pace" of the government in processing his efforts to correct his record, "forced" his decision to disavow to the ABCMR any reinstatement to active duty with the Army. Pl.'s Reply at 2.

The parties have cited no precedent specifically addressing how or whether the decision of an applicant to a military corrections board not to seek reinstatement as part of his or her request for relief may be adjudged voluntary or involuntary. Hr'g Tr. at 10, 29.[11] Rather, each has canvassed case law addressing the voluntariness of a service member's decision initially to separate from the military. Although these cases have elements in common with the present situation, the question here is more appropriately whether a reservist's choice to waive the option of returning to active duty should be binding on him as a bar to redress.

Major Anderson's refusal to return to active duty was effectively a waiver of a required element for relief under the constructive service doctrine. "A waiver is an intentional relinquishment of a known right." *A Olympic Forwarder, Inc. v. United States,* 33 Fed.Cl. 514, 521 (1995). "Waivers of rights must be voluntary, knowing, and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Krzeminski v. United States,* 13 Cl.Ct. 430, 438 (1987) (citing *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). If Major Anderson's waiver of his potential ability to return to active duty was made voluntarily and with knowledge of the circumstances and consequences, he must be bound by his decision.

Major Anderson has argued that returning to active duty would have placed him in an allegedly undesirable position of reentering active duty shortly before he was due to be reviewed by a promotion board. Pl.'s Opp. at 11. Given his record of "reserve OERs with civilians as both Rater and Senior Rater," Major Anderson asserts that his likelihood of promotion would have been small and, thus, the probability would be great that he would simply be passed over twice and again forced to leave active service. *Id.* Rather than face this prospect, which Major Anderson describes as "absurd," he chose to

---

11. Major Anderson has also asked the Court, as he asked the Board, to find that his original separation from the Army in 1994 was "forced." Pl.'s Opp. at 7; Pl.'s Reply at 1–2. The government has argued that Anderson's request to the Board not to be restored to active duty should his appeals be granted "effectively ratified his 1994 release as a voluntary release." Def.'s Mot. at 14. As a general rule, "[a] resignation from the military is presumed to be voluntary." *Lynn v. United States,* 58 Fed.Cl. 797, 801 (2003) (citing *Tippett v. United States,* 185 F.3d at 1255). However, the statute that mandated Major Anderson's separation in 1994 specifically provides that "[t]he retirement or discharge of an officer pursuant to this section shall be considered to be an involuntary retirement or discharge for purposes of any other provision of law." 10 U.S.C. § 631(b); *see also Ricks v. United States,* 278 F.3d 1360, 1364–65 (Fed.Cir.2002) (discussing voluntariness of retirement under equivalent "up-or-out" statute for majors, 10 U.S.C. § 632(b)). In all events, the circumstances of Major Anderson's separation in 1994 is irrelevant to his current claims and the pending motions. The issue considered by the Board and under review by the Court is whether he is entitled to any further relief in connection with his *post hoc* promotion in light of his request not to return to active duty.

continue his career in the AGR program within the Reserve. *Id.* For its part, the government has argued that Major Anderson's decision to stay out of active duty was, in fact, a tactical decision that he made freely. Def.'s Opp. at 6, 10–11. The government also contends that the delays associated with his administrative requests for relief were caused, at least in part, by his own inaction. *Id.* at 11–14.

The ABCMR specifically considered Major Anderson's waiver in reaching its decision:

> The Board noted the applicant's request for promotion reconsideration and if selected for promotion, that he not be restored to active duty. Historically, in promotion reconsideration cases where the applicant has already been separated from active duty, the ABCMR, when circumstances warrant, has offered applicants restoration to active duty contingent upon selection for promotion by a Special Selection Board. However, in this case the applicant stated that he did not want to be restored to active duty, thereby effectively eliminating this option from consideration by the ABCMR.

A.R. 23 at ¶ 4. The Board found that his decision was voluntary. A.R. 24 at ¶ 10 ("he voluntarily rejected the opportunity to be restored to active duty, thus eliminating the opportunity for continued service on active duty at that time"). Moreover, as the Board pointed out, Major Anderson's waiver is readily explicable because he has made a successful career out of reserve service, is serving full time in the AGR program, and "he has been promoted to major in an active duty status while a USAR AGR officer." *Id.* Indeed, the Board noted that Major Anderson "was promoted to major in the USAR before he would have been promoted to major had he continued on active duty." A.R. 26 at ¶ 17. As discussed, *infra*, at 459, the Court finds no reason to disturb the Board's determinations based on the evidence provided in the administrative record.

A question arises as to whether Major Anderson's decision, voluntarily made, was an informed choice, *i.e.*, whether he was sufficiently aware of the consequences of his actions. From the request that Major Anderson submitted to the Board, he apparently believed that he could waive any return to active duty and still be compensated. A.R. 66 ("I do not wish to be placed back on active duty, but instead compensated for the full monetary equivalence of that promotion."). Aside from this mistaken interpretation of law, Major Anderson has made no argument or showing that his request to the Board was anything other than informed and carefully contemplated. His mistaken interpretation of the law does not obviate the fact that Major Anderson apparently undertook a careful consideration of his career and circumstances prior to filing his appeal with the Board and making his request to be left in the Reserves. *See Turnage v. Dep't. of Agriculture*, 230 Ct.Cl. 799, 1982 WL 25186 (1982) (holding that an express waiver of the right to a hearing before an administrative board was a tactical decision, made knowingly and voluntarily despite the plaintiff's misinterpretation of the applicable law and regulations). *Cf. McMann v. Richardson*, 397 U.S. 759, 774, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (finding that a criminal defendant's guilty plea was a valid waiver of his rights and that "he assume[d] the risk o[f] ordinary error in either his or his attorney's assessment of the law and facts"); *Bridges v. United States*, 794 F.2d 1189, 1194 (7th Cir.1986) ("The waiver of constitutional rights, in general, may be effective even without specific knowledge of all the implications."). Major Anderson knew that he did not want to return to active duty and chose to give this desire primacy in his tactical decision to foreswear any potential for such return.

Because Major Anderson voluntarily and knowingly foreswore the option of returning to active duty when he requested constructive service pay from the ABCMR, he is not entitled to relief under the constructive-service doctrine. Due to this refusal to be reinstated and the fact that he did not serve on active duty during the time for which he requests payment, Major Anderson is not entitled to relief under the Military Pay Act. Accordingly, he has failed to state a claim for which this Court can provide relief. The Court therefore grants the government's motion to dismiss pursuant to RCFC 12(b)(6).

*Judgment Upon the Administrative Record—Rule 56.1*

The government has also asked the Court to affirm the ABCMR's decision and enter judgment in the government's favor based upon the administrative record. Because such request is made "in the alternative" and is echoed in Major Anderson's cross-motion, the Court will address the Board's decision and the administrative record here as an alternative basis for decision.

When a court reviews the ruling of a military corrections board to determine whether it was arbitrary, capricious, made in bad faith, unsupported by evidence, or contrary to law, it applies the "substantial evidence rule." *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983). To successfully challenge the Board's decision, Major Anderson must point to substantial evidence showing that the Board's conclusions were not supportable or were contrary to law.

Major Anderson's complaint does not specify the grounds upon which he opposes the ABCMR's decision but instead simply avers that the government "failed to properly compensate [him] for the constructive active duty time and separation pay differential he would have received had [he] not been wrongfully removed from active duty." Compl. ¶ 18. He also does not cite to any particular evidence that would work to undermine the Board's findings and conclusions. As previously explained, there is no evidence of coercion or that Major Anderson was in any way forced to decline to return to active duty. Similarly, there is no evidence of undue delay on the part of the Army in responding to Major Anderson's requests for correction of his records. The Board found that the delay in receiving and processing Major Anderson's requests for relief was "in great measure based on [his] delay in appealing the contested OER to the OSRB." Pl.'s Opp. at 14–15 (quoting A.R. 23). His two initial requests to the OSRB, in 1992 and 1994, were returned to him with explanations that he needed to gather and submit evidence to substantiate his claims. A.R. 10, 70. It was not until 1997 that he submitted a properly substantiated request to the OSRB. Based on a lack of explanation for the timing of his third submission, the Board was not unjustified in finding that any delays associated with Major Anderson's requests for administrative relief were in large part attributable to his own actions. Accordingly, because Major Anderson has not presented substantial evidence to show that the ABCMR's decision was arbitrary, capricious, unsupported by evidence, or contrary to law, as an alternative ground for its decision, the Court would grant the government's motion under Rule 56.1 and would deny Major Anderson's cross-motion.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss pursuant to RCFC 12(b)(6) is granted. The Clerk's Office is directed to enter judgment dismissing the case. No costs.